**TANKERSLEY CONSTRUCTION CO. et al. v. OHLS et al.**

No. 22323.   Opinion Filed Oct. 20, 1931.

Clayton B. Pierce, for petitioners.

John J. Carney, for respondents.

KORNEGAY, J. This is an original proceeding to review an award of the Industrial Commission. The award can be found on page 36 of the transcript, and is as follows:

"Now, on this 13th day of April, 1931, the State Industrial Commission being regularly in session, this cause comes on to be considered pursuant to a hearing held at Oklahoma City, Okla., on April 9, 1931, before Chairman Thos. H. Doyle, on motion of the claimant to reopen said cause and award further compensation, at which hearing the claimant appeared in person and by his attorney, J. J. Carney, and the respondent and insurance carrier appeared by C. B. Pierce, and the Commission, after reviewing the testimony taken at said hearing and all the records on file, and being otherwise well and sufficiently advised in the premises, makes the following findings of fact:

"1. That on the 15th day of February, 1930, claimant was in the employ of said respondent and engaged in a hazardous occupation subject to and covered by the provisions of the Workmen's Compensation Law, and that on said date he sustained an accidental injury, arising out of and in the course of his employment.

"2. That the average daily wage of the claimant at the time of said accidental injury was $19.20 per week.

"3. That by reason of said accidental injury, the claimant was temporarily totally disabled from the performance of his ordinary manual labor from February 15, 1930, to April 16, 1930, or for a total of 18 weeks beyond the five days' waiting period, for which he has been paid compensation at the rate of $12.31 per week, or a total of $221.58.

"4. That on the 1st of November, 1930, the claimant was again compelled to quit work on account of said accidental injury; and was not able to return to ordinary manual labor until four weeks beyond November 1, 1930.

"Upon consideration of the foregoing facts, the Commission is of opinion that the case should be reopened, and it is so ordered.

"Upon consideration of the foregoing facts, the Commission is of opinion that the claimant is entitled to four weeks' compensation from beyond November 1, 1930, at the rate of $12.31 per week, or a total of $49.24.

"It is therefore ordered, within 15 days from this date, the respondent or insurance carrier pay to the claimant herein the sum of $49.24, as compensation for four weeks beyond November 1, 1930.

"It is further ordered: That within 30 days from this date, the respondent or insurance carrier file with the Commission proper report or other receipt evidencing compliance with the terms of this order."

Complaint is made of the award on two grounds: The first is that no notice of the injury, forming the basis of the Commission's award, was given within 30 days, as required by section 7292, C. O. S. 1921, and the Industrial Commission was without authority to make the award. The second is that there was no competent evidence to sustain the award. The amount of the award in this case is small, it being for $49.24, dating from November 1, 1930, for four weeks' lost time.

Counter brief has been filed in this case. Certain authorities are relied on by the petitioner with reference to the necessity of notice, and among others is the case of Cagle v. Federal Mining & Smelting Co., 112 Okla. 247, 240 P. 617. It is claimed, on the one side, that this decision is on all fours with the facts in the present case. On the other side, it is claimed that it is not. We have read the entire record. The admitted facts in this case appear to be that the claimant was in the employ of the respondent, and he suffered a fall from a scaffold that broke down. He had a bar in his hand at the time that he fell, and he sustained an injury to two of his fingers. The employer's first notice of injury was received February 18, 1930. It states that the employee was injured in the course of his employment, and on being requested to describe how the accident occurred, it is stated:

"Injured party was working on scaffold when the same broke causing him to fall to ground, and large wrecking bar which he was working with fell on fingers of right hand, cutting end off of third finger and deep gash in second finger."

Under the requirement of stating the nature and extent of injury, it says:

"End of third finger cut off and gash in second finger near end."

Employee's first notice of injury was received on February 21, 1930. Under the head of nature and extent of injury, the statement is:

"Amputation of first joint on third finger; loss of second finger and amputation of thumb, and injury to back."

The insurance carrier, Aetna Life Insur-

ance Company, filed a report of initial payment of compensation on February 28, 1930. On March 3, 1930, there was received by the State Industrial Commission what purports to be the employee's first notice of injury and claim for compensation. This notice and the notice received February 21st, referred to above, bear the number of Claim No. A-45688. Under the head of cause of accident, we find, "scaffold broke." Under the head of nature and extent of injury, we find, "end of third finger cut off. Thumb and second finger injured." On March 10, 1930, there was another notice under the same claim number, that was received, and under the head of cause of accident, we find, "scaffolding gave away and fell." Under nature and extent of injury, it says, "Lost end of third finger of right hand; second finger also injured." On April 19, 1931, notice was given of the motion of claimant to determine the extent of liability, and May 6, 1930, was set for the hearing at Oklahoma City.

On April 4, 1930, a petition was filed with the State Industrial Commission, signed by John J. Carney, as attorney for claimant, setting up the injury as being to the third and second fingers of the right hand, resulting in a loss of the end of his third finger, and permanent partial loss of the use of his second finger, and asking for a date to be set for hearing, and for the awarding of such sum as it might be proved he was entitled to.

On the 2nd of May, 1930, there was filed a stipulation and receipt with the Commission, showing the extent of disability to be 8 weeks' temporary total and 10 weeks' permanent partial, or 50 per cent. loss of third finger of the right hand. It was signed by J. J. Carney, as attorney for claimant, by W. H. Eby, on behalf of the Tankersley Construction Company, and by Virgil Ohls. Accompanying this is a report from Dr. Samuel R. Cunningham, of the Medical Arts Building, Oklahoma City. This report confirms the loss of the finger. Accompanying this is an agreement between the employer and the employee as to the facts in relation to the injury and the payment of compensation therefor. This deals entirely with the injury to the fingers. On the 30th of July, 1930, there was an order of the Commission approving this receipt and settlement. On March 30, 1931, there was a notice of hearing upon the application of the claimant to reopen cause and award further compensation. The motion for additional compensation is found on page 13 of the transcript, and set up a change in condition, and that the consequences of the injury developed after the former settlement. This describes a fistula, and avers that permanent partial disability of the laborer has resulted from it. This resulted in a hearing before the Commission on the 9th of April, 1931, both sides appearing and announcing ready for trial.

The claimant, Ohls, gave testimony to the effect that while working for the company, on or about the 15th of February, 1930, he was wrecking forms on a scaffold and the scaffold broke and he fell, and the wrecking bar which he was using mashed his fingers, and he fell on a big pile of iron clamps. He claimed that he had received compensation for the injury to his fingers, and was not claiming for anything more on account of the fingers.

The insurance carrier objected on account of the stipulation of settlement, and on account of the fact that the injury was not mentioned in the notice, and that no appeal was taken from the settlement. In reply, the attorney on the other side claimed that the consequences of the injury that compensation is now sought for did not develop until after the settlement. The testimony of the claimant was that the fistula had developed sometime afterwards, on the left side and close to the rectum. In describing the development, the following took place, at page 18:

"Q. Do you remember the date when you first observed that pain or sensation which later showed to be a fistula? A. About a week and a half, it swelled up pretty good size, then about a month and a half after that it broke and ran, then healed up again, then broke out again, kept getting so sore I could not walk and work and had to quit, and told the timekeeper. Q. When did you quit work on account of this injury? A. November 1st. Q. What year? A. 1930. Q. Had you worked from the time the injury first developed until that time? A. Yes, sir. Q. At that time you may tell the court whether or not you quit or could not work on account of this injury? Or rather were you compelled to quit work on account of the injury? A. Yes, sir. Q. How long did you cease work on account of that trouble? A. I was off about six weeks."

He described the time that he laid off on account of it, and his having an operation, and the effect upon his bowels, and the pain in the small of his back, and his not having any trouble like that before; never had pain until the trouble came in the rectum; pain in the back had been there since the trouble came in the rectum.

He was cross-examined by Mr. Pierce, and it developed that he fell upon a lot of iron clamps when he lighted, and he lighted on his buttock. He noticed some pain in that

region after he fell, and it was rather severe. He detailed that about a week after the original stipulation and receipt were filed, the place broke and ran, and it ran nearly all summer, and never cleared up until he had an operation, about the 3rd of November, and when the operation was over, he returned to work some six weeks afterwards; that no one else had examined him before Dr. Hunter.

Dr. Shannon was introduced and told of having examined the respondent, and about the fistula, and about the history of the case, as given him by the patient, as to the pains in the back, and, after seeing Dr. Collins, paying no attention to the existing soreness until it developed the abscess. He stated that there might be some permanent result from the injury to the back, and was asked about whether the pain in the back would result on account of the breaking down of the sphincter muscles, and it was his opinion that it was possible but not probable. (T. 26) He was cross-examined, and he stated that he came to the conclusion that the man had a fistula, preceded by an abscess, and he said that it was impossible for him to determine whether or not the condition was due to that injury, or whether he had a fistula previous to the injury, but from the history of the case it could be caused and probably was caused by the injury; his testimony being as follows, at page 27:

"Q. What would that kind be called, ischium rectum abscess? A. Well, yes, you might get a fistula opening of that nature and might not, now it would be impossible for me to determine whether or not this condition was due to that injury, or whether he had a fistula previous to the injury, I don't know, but this could be caused, from the history of the case it probably is. Q. That is from the history he gave you? A. Yes, sir. Q. I understood from your testimony that he gave you a history of trouble in this region commencing at the time, the date of the injury and continued to the time of the operation? A. Complained of soreness, yes, sir."

In referring to his conversation with Dr. Hunter, at the bottom of page 28, the following took place:

"Q. You were testifying as to his language? A. I might base my opinion on what I got from him, as to the pathology existing at that time, I didn't see the man, he told me it could have come from that."

In the redirect examination, he stated that it probably came from trauma. And on further re-cross-examination, at page 30, we find the following:

"A. I base my answer on this, that he told me he was injured in that region at the time of the accident, and that he did suffer more or less pains in those muscles, had gone to a physician about that, then upon making inquiry of Dr. Hunter as to the nature of the pathology there, it could have been caused there, him having told me, he could have, this man was a good healthy man before that time, would lead me to conclude the possibility is that caused from the abscess."

He was questioned by the Commissioner with reference to fistula, etc., and again re-examined.

The Commissioners found that the fistula had been brought about as a result of the accidental injury, and made the award. We are not able to say that they were not justified in doing so. Under the law they were the judges of the facts, and if there was any competent evidence, under the ruling of the court, their award should not be disturbed.

We think that the original notices, especially the one about the injury to the back, which was received February 21, 1930, were sufficient to put the insurance carrier and the employer on notice, and that the fact that the consequences of the injury had not developed when the settlement was had, would not preclude the Commission from going into the matter when the consequences of the injury for which compensation was awarded actually developed. The very purpose of the continuing jurisdiction of the Commission, under the section about opening an award on a change of condition, (sec. 7296, C. O. S. 1921), as well as section 7325, C. O. S. 1921, as amended in Laws 1923, c. 61, sec. 13, conferring continuing jurisdiction, was to take care of cases as they were developed.

We cannot say that the Commissioners were not justified in making the orders they did make, under the rules that have heretofore been laid down, with reference to our duty in reviewing decisions of the Industrial Commission on questions of fact. The award is therefore affirmed.

LESTER, C. J., CLARK, V. C. J., and SWINDALL, ANDREWS, and McNEILL, JJ., concur. RILEY, HEFNER, and CULLISON, JJ., absent.